UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

MARCAUREL A. PIERRE,
     Plaintiff,

vs.                      Case No.: 3:23cv12771/MCR/ZCB

COREY SETTLEMIRES, et al.,
     Defendants.
_____/

## REPORT AND RECOMMENDATION

This is a *pro se* prisoner civil rights case filed under 42 U.S.C. § 1983. Currently before the Court is a motion to dismiss filed by Defendants Settlemires and Greger, which Plaintiff opposes. (Docs. 24, 27). For the reasons below, Defendants' motion should be granted.

## I.    Summary of Plaintiff's Factual Allegations[1]

Plaintiff is incarcerated in the Florida Department of Corrections (FDOC). He alleges that on April 19, 2022, he was transferred to Okaloosa Correctional Institution and processed into the institution by

_____

[1] At this stage in the proceeding, the Court assumes the truth of Plaintiff's allegations.

Defendant Greger.  (Doc. 7 at 5).  Defendant Greger escorted Plaintiff to a bathroom to conduct a strip search and ordered Plaintiff to remove his clothing.  (*Id.*).  Plaintiff hesitated, and Defendant Greger allegedly verbally threatened to "beat" Plaintiff if he did not comply with his order. (*Id.*).  After searching Plaintiff, Defendant Greger allegedly verbally abused and threatened him for several minutes as Plaintiff stood naked. (*Id.* at 5, 7).  Defendant Greger then stood behind Plaintiff and allegedly asked him to "stroke his penis and bend over and touch the floor." (*Id.* at 7).  According to Plaintiff, Defendant Greger grabbed Plaintiff's buttocks as he was bent over.  (*Id.*).  Plaintiff asked Defendant Greger why he was touching him sexually, and Defendant Greger told him to get dressed. (*Id.*).  Defendant Greger then allegedly threatened that he would "bury Plaintiff in confinement with disciplinary reports" if he said anything or filed complaints or grievances about what occurred.  (*Id.*).

Defendant Greger escorted Plaintiff to the main reception room and inventoried Plaintiff's property.  (*Id.*).  Defendant Greger supposedly confiscated many items of Plaintiff's property and asked Plaintiff to sign an inmate property form.  (*Id.*).  Plaintiff refused to sign the form because

some items of property were not listed. (*Id.*). Defendant Settlemires and two other officers allegedly grabbed Plaintiff and slammed him to the ground while he was fully restrained. (*Id.* at 8). Plaintiff further claims that Defendants Settlemires and Greger punched and kicked Plaintiff. (*Id.* at 8-10). Defendant Settlemires then allegedly sprayed Plaintiff with pepper spray. (*Id.*).

Next, Plaintiff says he was placed in a shower, where Defendant Settlemires again applied pepper spray. (*Id.* at 8). Defendant Greger was present during both applications of pepper spray but did not intervene. (*Id.* at 8-9). Defendant Settlemires uncuffed Plaintiff and allowed him to decontaminate from the pepper spray. (*Id.* at 8). Plaintiff was then seen by a nurse. (*Id.*). He alleges he suffered permanent injuries to his left hand, leg, and eyes. (*Id.* at 10).

Plaintiff claims that the sexual assault and uses of force violated his Eighth Amendment rights. (*Id.* at 9-10). He seeks compensatory and punitive damages. (*Id.* at 10).

## II.    Discussion

Defendants Settlemires and Greger seek dismissal because Plaintiff failed to exhaust his administrative remedies.  Under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner must exhaust administrative remedies before bringing an action in federal court.  *Porter v. Nussle*, 534 U.S. 516, 520 (2002).  The exhaustion requirement is intended to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  *Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (cleaned up).  "The exhaustion requirement applies to all inmate suits about prison life[.]"  *Tilus v. Kelly*, 510 F. App'x 864, 866 (11th Cir. 2013). A court cannot waive the PLRA's exhaustion requirement.  *Alexander v. Hawk*, 159 F.3d 1321, 1326 (11th Cir. 1998).  "The failure to exhaust administrative remedies requires dismissal of the action."  *Wright v. Georgia Dep't of Corr.*, 820 F. App'x 841, 843 (11th Cir. 2020).

To exhaust, a prisoner must complete the administrative process using the prison's grievance procedures.  *Jones v. Bock*, 549 U.S. 199, 218 (2007).  And the prisoner must properly exhaust by complying with all of

4

the administrative system's critical procedural rules. *Woodford*, 548 U.S. at 93, 95 (emphasis added); *Jones*, 549 U.S. at 218 (explaining that it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion).

The FDOC has promulgated a three-step grievance procedure: (1) the inmate files an informal grievance within twenty days of the incident; (2) if the grievance is not resolved informally, then the inmate files a formal grievance at the institutional level within fifteen days from the date the informal grievance was responded to; and (3) if the inmate is unhappy with the formal grievance response, then the inmate appeals to the FDOC Secretary/Central Office within fifteen days of the response to the formal grievance. Fla. Admin. Code Ann. r. 33-103.005-007, 011 (2018). Certain types of grievances, for example grievances alleging sexual abuse, may bypass the informal grievance stage and begin at the formal grievance stage. *Id.*, rr. 33-103.005(1), 33-103.006(3)(j).

The Eleventh Circuit has adopted a two-step framework for deciding whether to dismiss for lack of exhaustion. *Turner v. Burnside*, 541 F.3d 1077, 1082-83 (11th Cir. 2008). Under the first step, the Court

must "look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true." *Whatley v. Warden, Ware State Prison*, 802 F.3d 1205, 1209 (11th Cir. 2015).  If the facts as stated by the prisoner show a failure to exhaust, then the case should be dismissed at step one.  *Id.*

Where dismissal is not warranted on the prisoner's view of the facts, it is necessary to proceed to step two.  *Id.*  There, "the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust."  *Id.*  Those findings may include credibility determinations.  *Bryant v. Rich*, 530 F.3d 1368, 1377-78 (11th Cir. 2008).  "To make these specific findings, courts should . . . look outside [of] the pleadings[,]" ensuring the parties have had sufficient opportunity to develop the record.  *Jenkins v. Sloan*, 826 F. App'x 833, 838 (11th Cir. 2020).  A court may rely on the papers submitted by the parties and need not hold an evidentiary hearing if neither party has requested one.  *See Zavala v. Ward*, No. 21-10989, 2024 WL 510011, at *4 (11th Cir. Feb. 9, 2024) ("Because [the plaintiff]

never moved for an evidentiary hearing, the district court was free to make its factual determinations based on the papers submitted . . . .").

The Court will first generally frame the parties' arguments. Then, the Court will explain the parties' respective burdens of proof. And lastly, the Court will discuss whether the parties have met their respective burdens of proof.

## A.    The parties' arguments

Defendants Greger and Settlemires argue that an administrative remedy was available to Plaintiff through the FDOC's three-step grievance procedure set out above. Defendants argue that Plaintiff did not properly utilize that procedure during the relevant time period of April 19, 2022 to May 31, 2023.[2] Defendants' exhaustion argument is more fully fleshed out in their supporting evidentiary materials, including declarations from an institutional grievance coordinator and

---

[2] That is the relevant time period because Defendants' allegedly unconstitutional conduct occurred on April 19, 2022, and Plaintiff filed this civil rights case on May 31, 2023. *See Smith v. Terry*, 491 F. App'x 81, 83 (11th Cir. 2012) (explaining that the only facts pertinent to determining whether a plaintiff has satisfied the exhaustion requirement are those that existed on the date he filed his original § 1983 complaint).

records custodian for grievance appeals, grievance logs, and copies of relevant grievances. (Docs. 24-1 through 24-9). They identify each grievance filed in the relevant time frame that mentioned Defendant Greger or Defendant Settlemires and then explain why those grievances demonstrate that Plaintiff failed to properly exhaust.

For his part, Plaintiff argues that the grievance records submitted by Defendants prove that he "attempted" to exhaust. (Doc. 27 at 1, 3). He argues that an administrative remedy was not available for several reasons. First, prison officials failed to respond to his grievances, returned them without action, or "stopped" them. (*Id.* at 1-3). Second, Plaintiff does not speak, read, write, or fully understand the English language and suffers from "mental damage." (*Id.* at 1-2). And third, Defendant Greger threatened to "bury" him with disciplinary reports if he grieved the sexual assault. (Doc. 7 at 7).

**B.    The parties' respective burdens of proof**

Because Plaintiff argues that administrative remedies were unavailable, the Court must apply both steps of the *Turner* analysis. *See Turner*, 541 F.3d at 1082-83; *Montalban v. Doe*, 801 F. App'x 710, 711

8

(11th Cir. 2020) (holding that district court must apply both *Turner* steps to plaintiff's argument that administrative remedies were practically unavailable to him); *Abram v. Leu*, 759 F. App'x 856, 861 (11th Cir. 2019) (holding that district court must conduct two-step inquiry when plaintiff's allegations raise the question of whether administrative remedies were available).

Under *Turner*, Defendants bear the initial burden of proving that a grievance procedure was generally available and that Plaintiff failed to properly exhaust it. *Turner*, 541 F.3d at 1082. If Defendants satisfy this burden, then the burden shifts to Plaintiff to prove that the generally available procedure was subjectively and objectively unavailable to him. *Geter v. Baldwin State Prison*, 974 F.3d 1348, 1356 (11th Cir. 2020).

## C. Defendants have met their burden of showing that an administrative remedy was generally available, and that Plaintiff failed to properly exhaust it.

Defendants Greger and Settlemires start out by arguing that during the relevant time frame, Plaintiff did not have any approved informal grievances relating to his allegations of sexual assault and excessive force. (Doc. 24 at 10-11) (emphasis added). As Plaintiff points

out, the fact that he did not have approved grievances does not necessarily mean he failed to exhaust. Indeed, an inmate may satisfy the exhaustion requirement even if his grievances are not approved, so long as he properly completes all available steps of review. As will be discussed below, the grievance records demonstrate that Plaintiff did not properly complete all of those steps.

Let's start with informal grievances. Institutional Grievance Coordinator Glenn Hancock has explained that during the relevant time period, Plaintiff filed a total of twenty-six informal grievances. (Doc. 24-1 at 1; Doc. 24-2). Only four of those informal grievances related to complaints of improper conduct by prison staff, and all four of them were approved for further action, log #115-2302-0105, #115-2302-0106, #115-2303-0253, and #104-2305-0326. (Doc. 24-1 at 1; Doc. 24-2; Doc. 24-3). None of those grievances mentioned the sexual assault by Defendant Greger or the use of force by Defendants Greger and Settlemires on April 19, 2022. (Doc. 24-1 at 1-2; Doc. 24-3). Thus, the grievance records demonstrate that Plaintiff did not file an informal grievance about the conduct at issue in this case.

10

That does not end the exhaustion analysis. That is because FDOC rules permit inmates to bypass the informal level with respect to sexual assaults and initiate the grievance process at the formal level. So, the Court will look at Plaintiff's formal grievances. Grievance Coordinator Hancock has explained that Plaintiff filed fifteen formal grievances during the relevant time period. (Doc. 24-1 at 2; Doc. 24-4). Only two of those grievances were procedurally compliant. (*Id*.). The other thirteen were returned without processing as procedurally non-compliant. (*Id*.).

With respect to the two procedurally compliant formal grievances, Grievance Coordinator Hancock has explained that neither of those formal grievances mentioned abuse by staff (either sexual or physical). Hancock's explanation is verified by the grievance records. One of the grievances, log #2205-115-027 appealed a disciplinary report that Defendant Greger issued on April 19, 2022, charging Plaintiff with disobeying an order. (Doc. 24-1 at 2; Doc. 24-4 at 1; Doc. 24-5). Plaintiff did not mention a sexual assault or use of force in that grievance. (*Id*.). The other grievance, formal log #2305-104-122, grieved inadequate medical treatment at a different institution (Jackson C.I.) in May 2023.

11

(Doc. 24-4 at 14-15). Because neither of those formal grievances grieved the issue of the alleged sexual assault or use of force by Defendants Greger and Settlemires on April 19, 2022, they did not exhaust the claims Plaintiff has raised in this case.

The next question is whether any of the returned formal grievances grieved the sexual assault and use of force on April 19, 2022, and if so, whether the grievance was properly returned as non-compliant. The answer to the first question is no, so the Court need not reach the second one.

Grievance Coordinator Hancock has stated that only one of Plaintiff's procedurally non-compliant formal grievances mentioned Defendants Greger and Settlemires, formal log #2305-104-022. (Doc. 24-1 at 2). In that grievance, Plaintiff alleged that two officers at Okaloosa C.I. (neither Greger nor Settlemires) retaliated against him on March 20, 2023. (*Id.* at 24-6 at 2). Plaintiff alleged that this was the last in a series of multiple instances of misconduct by a group of officers in the confinement unit at Okaloosa C.I. (including Defendant Greger, Defendant Settlemires, and seven other officers) from July 9, 2022 until

12

March 2023. (*Id.*). Plaintiff did not mention the separate and distinct sexual assault and use of force that allegedly occurred on April 19, 2022. (*Id.*). For that reason, the formal grievance was not sufficient to exhaust the claims presented in this § 1983 action. *See Miles v. Jackson*, 757 F. App'x 828, 829-30 (11th Cir. 2018) (holding that the court could not consider the question of whether one defendant's use of force outside plaintiff's cell was excessive because plaintiff did not file a grievance about that use of force).

To complete the grievance picture, the Court will turn to Plaintiff's grievances filed at the Secretary/Central Office level. Records Custodian Lawanda Sanders has stated that only one of those grievances related to the claims presented in this lawsuit, Central Office log #22-6-27970. (Doc. 24-7 at 1-2; Doc. 24-9). Plaintiff filed that grievance on September 20, 2022. (Doc. 24-9 at 2-3). The grievance was returned without action as procedurally non-compliant because it addressed more than one issue or complaint. (*Id.* at 1). Plaintiff was instructed to address each issue in separate grievances and to submit them at the appropriate institutional level (informal or formal, depending upon the nature of the issue). (*Id.*).

This grievance did not satisfy the exhaustion requirement because the Secretary/Central Office properly returned it for failing to comply with the rule requiring an inmate to grieve only one issue or complaint in each grievance. Fla. Admin. Code r. 33-103.014(1)(a). The grievance records demonstrate that Plaintiff's Central Office grievance presented numerous issues. (Doc. 24-9). For that reason, his non-compliant grievance did not satisfy the exhaustion requirement. *See Bracero v. Sec'y, Fla. Dep't of Corr.*, 748 F. App'x 200, 203 (11th Cir. 2018) (affirming district court's dismissal of complaint for failure to exhaust where the evidence established that prisoner's attempts to exhaust did not satisfy the requirement of "proper exhaustion" because his grievances were procedurally defective); *Gipson v. Renninger*, 750 F. App'x 948, 952-53 (11th Cir. 2018) (holding that Florida state prisoner failed to exhaust administrative remedies through direct grievance to Secretary's Office because the grievance was properly returned unfiled as non-compliant with procedural requirements).

As explained above, Defendants have satisfied their burden of demonstrating that Plaintiff failed to properly exhaust the available

administrative remedies under the FDOC's grievance procedure. Thus, the burden now shifts to Plaintiff to prove that the grievance process was subjectively and objectively unavailable to him. *See Geter*, 974 F.3d at 1356 (describing the burden shifting framework when a prisoner argues that administrative remedies were unavailable).

### D.    Plaintiff has not met his burden of proving that the grievance process was unavailable.

The PLRA requires inmates to exhaust only those administrative remedies that are "available." 42 U.S.C. § 1997e(a). The modifier "available" means that an administrative remedy must provide the possibility of some relief. *Ross v. Blake*, 578 U.S. 632, 643 (2016). There are three circumstances that make an administrative remedy unavailable. *Ross*, 578 U.S. at 643. First, the administrative procedure operates as a simple "dead end," with officers unable or consistently unwilling to provide any relief to aggrieved inmates.[3]  *Id.*    Second, an

---

[3] An example would be if an inmate handbook required inmates to submit grievances to a particular office and that office disclaimed the capacity to consider the grievances, or if officials have authority to consider the grievances but decline to do so. *Ross*, 578 U.S. at 643.

15

administrative scheme is so opaque that it is incapable of use; in other words, a grievance mechanism exists, but no ordinary prisoner can discern or navigate it. *Id.* at 643-44. Third, prison administrators thwart inmates from taking advantage of a grievance process through "machination, misrepresentation, and intimidation." *Id.* at 643-44.

Here, Plaintiff argues that administrative remedies were not available for several reasons. First, he filed many grievances concerning sexual, physical, and mental abuse, but prison officials failed to respond, returned the grievances without action, or "stopped" them. (Doc. 27 at 1-3). Second, a language barrier and Plaintiff's "mental damage" prevented him from exhausting. (*Id.* at 1-2). And third, Defendant Greger threatened to "bury" him with disciplinary reports if he grieved the sexual assault. (Doc. 7 at 7).

>    **1.    The grievance process was not unavailable due to prison officials' failing to respond Plaintiff's grievances, returning them without action, or "stopping" them.**

In response to Defendants' motion to dismiss, Plaintiff alleges he submitted "many" grievances but prison officials failed to respond to

them, returned them without action, or "stopped" them.  (Doc. 27 at 1-3).

Plaintiff's "failed to respond" argument cannot succeed because he did

not provide any evidence (for example, a sworn affidavit, functional

equivalent, or documentary evidence) that he submitted any grievance

that went ignored.[4]  Defendants, on the other hand, submitted grievance

logs which show that Plaintiff submitted fifty-two grievances, and prison

officials responded to all of them (by either approving, denying, or

returning them as procedurally noncompliant).  (Docs. 24-2, 24-4, 24-8).

Moreover, if Plaintiff did not receive a response to a particular grievance

within the time frame set out in the FDOC's administrative rule, *see* Fla.

Admin. Code Ann. r. 33-103.011(3), then he was authorized to proceed to

---

[4] At *Turner*'s second step, a plaintiff may not offer conclusory statements broadly asserting that the grievance process was unavailable.  *See McDowell, v. Bowman*, No. 21-10840, 2022 WL 4140331, at *4 (11th Cir. Sept. 13, 2022).    For example, when a plaintiff claims that he never received a response to grievances related to his underlying § 1983 claims, he must provide the Court with evidence that he submitted those grievances.  *Id.*  That evidence may take the form of a sworn affidavit detailing specific actions that each prison official took to deter or prevent the plaintiff from filing grievances.  *See Jenkins*, 826 F. App'x at 839-40.

the next step of the grievance process, *see* Fla. Admin. Code Ann. r. 33-103.001(4).[5]

Considering the record, the Court finds that Plaintiff has not met his burden of showing that administrative remedies were unavailable due to prison officials' failing to respond to his grievances in a timely manner. *See Bracero*, 748 F. App'x at 204 (rejecting prisoner's argument that prison officials' lack of response to certain grievance prevented him from going forward with the FDOC's three-step process because

---

[5] The administrative rule provides that the expiration of a time limit at any step in the grievance process entitles the inmate to proceed to the next step of the grievance process. *Id.* It instructs that in such circumstances, the inmate must clearly indicate that fact when filing at the next step of the process. *Id.* The rule advises inmates that a response to a Central Office appeal is not received within the time limit, then the inmate is "entitled to proceed with judicial remedies as he would have exhausted his administrative remedies." *Id.* And the Eleventh Circuit has repeatedly recognized that the prison's failure to respond timely to a grievance does not excuse a prisoner's failure to proceed through the three-step grievance procedure. *See Pavao v. Sims*, 679 F. App'x 819, 826 (11th Cir. 2017) (finding that prisoner failed to exhaust because "even assuming that the prison failed to respond to that grievance, the grievance procedure provides that he could have proceeded to the next step of the grievance process—administrative appeal—after the expiration of twenty days. Because he could have proceeded by filing an administrative appeal, the PLRA still requires him to file an appeal notwithstanding the prison's lack of response.").

grievance process permitted prisoner to proceed with the next step after expiration of prison's time to respond).[6]

Plaintiff also has not shown that the grievance process was unavailable due to prison officials' returning grievances as procedurally non-compliant.  (Doc. 27 at 1-2)  Prison officials' enforcing rules that are clearly set out in the grievance procedure does not render administrative remedies unavailable, especially where Plaintiff has not shown that any grievance concerning Defendants' conduct on April 19, 2022, was returned as non-complaint even though it actually complied with the procedural rules.[7]  For these reasons, this unavailability argument fails. *See Thomas v. Bradshaw*, No. 20-13471, 2022 WL 333244, at *6 (11th Cir. Feb. 4, 2022) (rejecting prisoner's argument that prison official

---

[6] *See also McDowell*, 2022 WL 4140331, at *4 (affirming district court's rejection of prisoner's argument that administrative remedies were unavailable due to prison official's failing to review an inmate request that he allegedly submitted, where prisoner offered nothing but conclusory statements broadly asserting that an official failed to review his written grievance and failed to provide access to the electronic grievance system).

[7] S*ee* Fla. Admin. Code Ann. r. 33-103.014 (listing the reasons that a grievance or appeal may be returned to the inmate without processing).

thwarted his ability to pursue grievance appeal by enforcing the jail's procedural rules); *see also Bracero*, 748 F. App'x at 203-04 (explaining that prison officials' refusal to address the substance of non-compliant grievances did not render administrative remedies unavailable).[8]

Last in this category of Plaintiff's unavailability arguments is his assertion that "staff" at Okaloosa C.I. "stopped" his grievances. (Doc. 27 at 3). Plaintiff has not alleged any specifics or provided any evidence to support this conclusory statement. For example, he does not name or describe any particular staff member who "stopped" a grievance. He does not describe the type or nature of any particular grievance that was "stopped." He does not describe when he allegedly attempted to file the "stopped" grievance. He also does not describe how the grievance was "stopped."

---

[8] *See also Black v. Rayburn*, No. 22-10826, 2024 WL 64291, at *3 (11th Cir. Jan. 5, 2024) (holding that prisoner failed to meet his burden to show that prison officials' rejection of his grievance was arbitrary or capricious or intended to prevent him from exhausting administrative remedies, where prisoner failed to support his allegations with any evidence).

Additionally, Plaintiff's extensive history of filing grievances, evidenced by the grievance logs (Docs. 24-2, 24-4, 24-8), refutes Plaintiff's assertion that administrative remedies were unavailable because prison officials "stopped" him from filing them. *See Bryant*, 530 F.3d at 1377-78 (finding that prisoner's allegation of lack of access to grievance forms was not credible where the evidence showed that prisoner had filed a grievance on another issue, which supported a reasonable inference that prisoner had access to grievance forms); *see also Whatley*, 898 F.3d at 1083 (noting that district court appropriately considered prisoner's grievance history as evidence that defendants did not take actions to make the administrative process unavailable); *Schlicher v. Fla. Dep't of Corr.*, 399 F. App'x 538, 539 (11th Cir. 2010) (affirming district court's finding that remedies were available where the record showed that prisoner filed grievances on other issues).

For the reasons above, Plaintiff has not shown that the administrative remedies were unavailable due to prison officials' failing to respond to them, returning them as procedurally non-compliant, or "stopping" them.

### 2.    The grievance process was not unavailable due to a language barrier or Plaintiff's mental capabilities.

Plaintiff's next unavailability argument is that administrative remedies were unavailable because of a language barrier and his mental capabilities. (Doc. 27 at 1-2). He alleges he does not speak, read, write, or have a full understanding of the English language. (*Id.*). He further alleges, "the severity of Plaintiff's mental damage has stop[ped] him from normal facility activities." (*Id.* at 2).

Defendants submitted a sample of the grievances that Plaintiff submitted at each of the three grievance levels. (Docs. 24-3, 24-5, 24-6, 24-9). Those grievances demonstrate that Plaintiff had sufficient linguistic and mental abilities, either on his own or with assistance, to understand the grievance procedure and its requirements. Indeed, during the relevant time frame, Plaintiff exhausted four unrelated complaints of staff misconduct, including a complaint of sexual abuse. (Doc. 24-3). The fact that many of Plaintiff's other grievances were returned without a merits review due to non-compliance with procedural rules, does not establish that Plaintiff lacked the mental capacity to

22

understand the rules.  His ability to understand the rules and his willingness to follow them are two different things.

Based on the record, the Court finds that Plaintiff's mental and linguistic limitations, to the extent he had any, did not render the administrative grievance process unavailable.  *See Varner v. Shephard*, 11 F.4th 1252, 1260 (11th Cir. 2021) (recognizing that the Eleventh Circuit had not addressed the question of whether mental illness may render administrative remedies unavailable, and declining to reach the issue because the district court did not clearly err in finding that the plaintiff's close-in-time grievances demonstrated that he was aware of the grievance process and capable of submitting grievances).

### 3.  The grievance process was not unavailable due to Defendant Greger's alleged threat.

In Plaintiff's response to Defendants' motion to dismiss, he did not allege that any threat rendered the grievance process unavailable.  But Plaintiff did make that allegation in his Amended Complaint, which he signed under penalty of perjury.  (Doc. 7 at 7, 15-16).  Plaintiff alleged that immediately after the alleged sexual assault, Greger said, "If you

23

say anything or file an complaint or grievance, I will make shour [sic] your [sic] burried [sic] in confinement with disciplinary reports that will send you back to CM [Close Management]." (*Id.* at 7). Because Defendants had notice of the threat allegation, and thus had an opportunity to marshal evidence to demonstrate that the grievance process was available despite the alleged threat, the Court will consider Plaintiff's allegation.

A threat of harm may render a remedy unavailable if two conditions are met: (1) the threat actually deterred the plaintiff inmate from lodging a grievance or pursuing a particular part of the process; and (2) the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust. *Turner*, 541 F.3d at 1084.

Accepting as true Plaintiff's allegation that Defendant Greger threatened to "bury him in confinement with disciplinary reports" if he grieved the alleged sexual assault, the question becomes whether that threat rendered administrative remedies unavailable to Plaintiff. The answer to that question is no for the reasons explained below.

24

The FDOC expanded the availability of administrative remedies to grieve an incident of sexual abuse.  Inmates may bypass the informal grievance stage and initiate a report of sexual abuse at the formal stage. Fla. Admin. Code Ann. r. 33-103.006(3)(j)1.a.  Additionally, a third party may file a grievance on an inmate's behalf (the third party may be a fellow inmate, staff member, family member, or outside advocate).  *Id.*, r. 33-103.006(3)(j)1.a., c.  And there is no time limit on an inmate or third party's initiating a formal grievance of sexual abuse.  *Id.*, rr. 33-103.006(3)(j)1.a., 33-103.011(1)(b)4.

Here, there is no credible evidence that Defendant Greger's alleged threat actually deterred Plaintiff from grieving the sexual assault. *Whatley*, 898 F.3d at 1083 (noting that at step two of *Turner*, the district court may weigh the evidence and credit one party's evidence over the other's); *Bryant*, 530 F.3d at 1377 & n.16 (same).  For starters, the unrebutted evidence shows that Plaintiff filed a formal grievance at the institution within a few weeks of the alleged sexual assault, and it concerned Defendant Greger.  (Doc. 24-5).  Plaintiff's grievance did not mention the sexual assault by Defendant Greger; rather, it mentioned

25

Defendant Greger's issuing a disciplinary report on that day. Defendant Greger's alleged threat obviously did not deter Plaintiff from making Greger the subject of a formal grievance. *See Coleman v. Bowden*, 797 F. App'x 422, 429 (11th Cir. 2019) (rejecting prisoner's argument that grievance procedure was unavailable due to threat of retaliation because any such threat did not actually deter him from filing a grievance).

For the reasons above, the Court finds that Plaintiff has not met his burden of proving that the administrative remedy process was unavailable.

## IV.   Conclusion

Because Plaintiff failed to satisfy the PLRA's exhaustion requirement, it is respectfully **RECOMMENDED** that:

1.   The motion to dismiss filed by Defendants Settlemires and Greger (Doc. 24) be **GRANTED**.

2.   Plaintiff's claims against Defendants Settlemires and Greger be **DISMISSED without prejudice** for failure to exhaust administrative remedies under 42 U.S.C. 1997e(a).

At Pensacola, Florida this 31st day of July 2024.

/s/ Zachary C. Bolitho
Zachary C. Bolitho
United States Magistrate Judge

## **Notice to the Parties**

Objections to these proposed findings and recommendations must be filed within fourteen days of the date of this Report and Recommendation.  <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control</u>.  An objecting party must serve a copy of the objections on all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.